LATHAM & WATKINS LLP
Brittany N. Lovejoy (SBN 286813)
Robin L. Gushman (SBN 305048)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.391.0600
Email: *britt.lovejoy@lw.com*
*robin.gushman@lw.com*

*Attorneys for Non-Party Lightspeed Management Company, L.L.C. d/b/a Lightspeed Venture Partners*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re SUBPOENA to LIGHTSPEED VENTURE PARTNERS, | CASE NO. 3:26-mc-80289 |
| | (Underlying Case Pending in U.S. District Court for the District of Massachusetts: *UMG Recordings, Inc. v. Suno, Inc.*, Civil Action No. 1:24-cv-11611-FDS) |
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,<br>Plaintiffs,<br>v.<br>SUNO, INC. and JOHN DOES 1-10,<br>Defendant. | **NON-PARTY LIGHTSPEED MANAGEMENT COMPANY, L.L.C.'S NOTICE OF MOTION AND MOTION TO QUASH PLAINTIFFS' SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: TBD<br>Hearing Time: TBD<br>Judge: TBD<br>Courtroom: TBD |

# NOTICE OF MOTION AND MOTION

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** ON ________________________, 2026, at ____ a.m., or as soon thereafter as the matter may be heard, Non-Party Lightspeed Management Company, L.L.C. d/b/a Lightspeed Venture Partners ("Lightspeed"), by and through its undersigned counsel will, and hereby does, move this Court for an Order to Quash the subpoena issued by UMG Recordings, Inc., Capitol Records, LLC, and Sony Music Entertainment (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 45. Lightspeed's Motion to Quash is based on this Notice, the supporting Memorandum of Points and Authorities below, the Brittany N. Lovejoy Declaration, and any additional material and arguments as may be considered in connection with the hearing.

Dated: September 16, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

By *___/s/ Robin L. Gushman___*

Robin L. Gushman (SBN 305048)
*robin.gushman@lw.com*
Brittany N. Lovejoy (SBN 286813)
*britt.lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.391.0600

*Attorneys for Non-Party Lightspeed Management Company, L.L.C. d/b/a Lightspeed Venture Partners*

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. The Underlying Litigation ..... 2

B. Original Document Subpoena and Lightspeed's Production ..... 2

C. New Document Subpoena and Deposition Subpoena ..... 3

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. The New Subpoena Is Untimely ..... 5

B. The New Subpoena Is Unduly Burdensome and Seeks Cumulative Documents and Testimony of Minimal Relevance ..... 6

1. The New Document Subpoena Seeks Cumulative Discovery of Marginal Relevance and Imposes an Undue Burden on a Non-Party ..... 6

2. The Deposition Subpoena Seeks Overly Broad, Duplicative Testimony and Imposes a Substantial Burden on a Non-Party ..... 11

C. The Requested Discovery Is Not Proportional to the Needs of the Case ..... 13

V. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
300 F.R.D. 406 (C.D. Cal. 2014) .......... 7, 13

*AngioScore, Inc. v. TriReme Med., Inc.*,
2014 WL 6706873 (N.D. Cal. Nov. 25, 2014) .......... *passim*

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
2014 WL 2798581 (N.D. Cal. June 19, 2014) .......... 5, 10

*Dart Indus. Co. v. Westwood Chem. Co.*,
649 F.2d 646 (9th Cir. 1980) .......... 5

*Dropbox, Inc. v. Motion Offense LLC*,
2022 WL 5400705 (N.D. Cal. Apr. 20, 2022) .......... 7, 10

*Fujikura Ltd. v. Finisar Corp.*,
2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) .......... 4

*Glass Egg Digital Media v. Gameloft, Inc.*,
2019 WL 4166780 (N.D. Cal. Sep. 3, 2019) .......... 4, 7, 10

*Kovalenko v. Kirkland & Ellis LLP*,
2024 WL 664691 (N.D. Cal. Feb. 16, 2024) .......... 9

*Lemberg L. LLC v. Hussin*,
2016 WL 3231300 (N.D. Cal. June 13, 2016) .......... 9

*Mattel, Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) .......... 7, 9

*Nidec Corp. v. Victor Co. of Japan*,
249 F.R.D. 575 (N.D. Cal. 2007) .......... 10

*Nova Biomedical Corp. v. i-STAT Corp.*,
182 F.R.D. 419 (S.D.N.Y. 1998) .......... 8

*Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*,
2024 WL 3925704 (N.D. Cal. Aug. 23, 2024) .......... 5, 10, 13

*Solamere Cap. v. DiManno*,
621 F. Supp. 3d 152 (D. Mass. 2022) .......... 8

*UMG Recordings, Inc. v. Suno, Inc.*,
No. 24-cv-11611 .......... 2

*United States v. Columbia Broad. Sys., Inc.*,
666 F.2d 364 (9th Cir. 1982) ....................................................................................7

*United States v. HVI Cat Canyon, Inc.*,
2016 WL 11683593 (C.D. Cal. Oct. 26, 2016)........................................................11

*Visto Corp. v. Smartner Information Systems, Ltd.*,
2007 WL 218771 (N.D. Cal. Jan. 29, 2007)....................................................10, 13

**RULES**

Fed. R. Civ. P. 26(b)(1)....................................................................................5, 13

Fed. R. Civ. P. 26(b)(2)(C)(i) ..........................................................................5, 7, 9

Fed. R. Civ. P. 26(b)(2)(C)(ii) ..........................................................................5, 6

Fed. R. Civ. P. 45(d)(1)......................................................................................4

Fed. R. Civ. P. 45(d)(3)(A)(i) ............................................................................4

Fed. R. Civ. P. 45(d)(3)(A)(iv) ..........................................................................4

## I. INTRODUCTION

This Court should quash the Subpoena to Produce Documents ("New Document Subpoena") and to Testify ("Deposition Subpoena") (collectively, "New Subpoena") issued by Plaintiffs to non-party Lightspeed Venture Partners.[1] The New Subpoena is untimely, unduly burdensome, and seeks cumulative discovery of marginal relevance from a non-party that has already produced over 1,000 pages of material in response to an earlier subpoena from Plaintiffs ("Original Subpoena").

Lightspeed is a venture capital firm and Series B, C, and D investor in Defendant Suno, Inc. ("Suno"). Lightspeed is not a party to the underlying action between Plaintiffs and Suno, and has no direct involvement in the copyright infringement claims at issue. Nevertheless, Plaintiffs have now served Lightspeed with a second round of discovery demands—this time seeking both an expanded document production and a corporate representative deposition—less than six weeks before the close of fact discovery on September 30, 2026.

Lightspeed has already demonstrated its good faith. In response to Plaintiffs' Original Subpoena, Lightspeed negotiated the scope of production and produced 1,259 pages of documents across six agreed-upon categories in October 2025. Plaintiffs never raised any deficiency with Lightspeed's production, never moved to compel the production of documents, and never sought additional documents—until August 24, 2026, when they served the New Subpoena at the eleventh hour of discovery.

The New Document Subpoena contains identical requests to the six categories Lightspeed already addressed in its prior production, differing only in that it extends the collection period forward from November 1, 2024 through the present. The Deposition Subpoena designates twenty topics spanning from January 2022 to the present, and seeks testimony on subjects that are either already addressed by Lightspeed's document production or that Suno itself is far better positioned to address through its own witnesses. Lightspeed respectfully requests that the Court quash the

---

[1] Lightspeed Venture Partners—the recipient name listed in Plaintiffs' New Subpoena—is merely a "doing business as" name for Lightspeed Management Company, L.L.C., and therefore has no documents in its possession, custody, or control. Lightspeed Management Company, L.L.C. d/b/a Lightspeed Venture Partners ("Lightspeed") reserves all rights with respect to Plaintiffs' improper service of the New Subpoena.

New Subpoena because it imposes undue burden on a non-party, seeks unreasonably cumulative and duplicative discovery, and is not proportional to the needs of this case.

## II. BACKGROUND

### A. The Underlying Litigation

Suno offers a generative artificial intelligence ("AI") tool that "creates digital music files within seconds of receiving a user's prompts." *UMG Recordings, Inc. v. Suno, Inc.*, No. 24-cv-11611, Answer ¶ 7, ECF No. 281 (D. Mass. Sep. 1, 2026) ("*UMG* Case") (Ex. A). By May 2023, Suno had begun developing its music-generative AI service and launched it publicly in July 2023.

In June 2024, UMG Recordings, Inc., Capitol Records, LLC, Sony Music Entertainment, Atlantic Recording Corporation, Atlantic Records Group LLC, Rhino Entertainment LLC, The All Blacks U.S.A., Inc., Warner Music International Services Limited, and Warner Records Inc. (collectively, "Original Plaintiffs")—a group of major record labels—filed a copyright infringement action against Suno in the United States District Court for the District of Massachusetts, alleging that Suno willfully copied and reproduced Plaintiffs' copyrighted sound recordings without authorization to train its music-generative AI service. *UMG* Case, Compl., ECF No. 1 (D. Mass. June 24, 2024) (Ex. B).[2] Substantial completion of party discovery has already passed, and fact discovery closes on September 30, 2026. *See UMG* Case, ECF No. 251 (D. Mass. June 30, 2026) (Ex. E).

### B. Original Document Subpoena and Lightspeed's Production

Lightspeed—a non-party to the *UMG* Case—first invested in Suno during its Series B funding round, which closed in May 2024, nearly a year after Suno publicly launched its music-generative AI service in July 2023. Lightspeed later invested in Suno's Series C and Series D funding rounds, which closed in November 2025 and June 2026, respectively.

---

[2] On December 9, 2025, Plaintiffs Atlantic Recording Corporation, Atlantic Records Group LLC, Rhino Entertainment LLC, The All Blacks U.S.A., Inc., Warner Music International Services Limited, and Warner Records Inc. (collectively, "Warner") stipulated with Suno to a voluntary dismissal of their claims. *See UMG* Case, ECF No. 174-1 (D. Mass. Dec. 9, 2025) (Ex. C). The court endorsed the stipulation on January 28, 2026, and dismissed Warner's claims with prejudice. *See UMG* Case, ECF No. 183 (D. Mass. Jan. 28, 2026) (Ex. D).

Original Plaintiffs served Lightspeed with the Original Subpoena, dated May 15, 2025, which contained one broadly worded document request for "All DOCUMENTS and COMMUNICATIONS RELATED TO SUNO," with no temporal limitation. *See* Ex. F. After Lightspeed served its Responses and Objections in June 2025, Original Plaintiffs and Lightspeed subsequently engaged in meet-and-confer discussions to negotiate the scope of production. *See* Brittany N. Lovejoy Decl. ¶¶ 10-14.

Following a series of good-faith negotiations, Lightspeed agreed to produce documents relevant to the following six categories: (1) Original Plaintiffs' sound recordings; (2) Suno's training data, including Suno's efforts or failure to license its training data (and any legal or business impacts or risks of the same); (3) copyright law in relation to Suno; (4) business risks associated with Suno's training data, Suno's relationship to the music industry, negative publicity, and Suno's ability to raise capital for a music-generative AI product; (5) the market for Suno's music-generative AI service and its outputs; and (6) Suno's actual or potential impact on the music industry. *Id.* ¶ 14. The parties also agreed that Lightspeed need not reproduce documents already produced by Suno in party discovery. *Id.* ¶ 13.

Lightspeed then collected, reviewed, and produced 152 documents (totaling 1,259 pages) on October 31, 2025. *Id.* ¶ 15. This production covered the time period up to June 6, 2025. *Id.* ¶ 16. And Lightspeed subsequently confirmed to Plaintiffs that it had not excluded any documents from its production based on potential inclusion in Suno's productions. *Id.* ¶ 17. Following Lightspeed's October 2025 production, Plaintiffs did not identify any deficiency, request supplementation, or otherwise communicate any dissatisfaction with Lightspeed's production. Nor did Plaintiffs move to compel any additional discovery from Lightspeed or seek *any* other relief. *Id.* ¶ 18.

### C. New Document Subpoena and Deposition Subpoena

On August 24, 2026—after months of silence and with fact discovery closing just six weeks later—Plaintiffs issued the New Subpoena that included both the New Document Subpoena and Deposition Subpoena. *See* Ex. G.

First, the New Document Subpoena contains six document requests that are virtually identical to the six agreed-upon categories from the Original Subpoena, but with an extended time frame of November 1, 2024 through the present day. *See id.* at 12–13. The New Document Subpoena requires production of documents seven days before the deposition, which was noticed for September 24, 2026. *Id.* at 3, 12.

Second, the Deposition Subpoena designates *twenty* topics for Rule 30(b)(6) testimony, spanning from January 1, 2022 to the present—a period exceeding four years. *See id.* at 8–11. The designated topics include, *inter alia*: the history of Lightspeed's relationship with Suno and specific Suno personnel; each of Lightspeed's investment rounds in Suno; documents provided by Suno to Lightspeed in connection with those investments; Suno's training data; due diligence Lightspeed conducted prior to its investment in Suno; public statements Lightspeed made about Suno; Lightspeed's understanding of the cost, availability, and terms of licensing sound recordings for use as training data; Suno's impact on the music industry; Lightspeed's role on Suno's Board of Directors; communications with Suno related to the *UMG* Case; and Lightspeed's produced documents. *Id.* at 9–11.

Notably, given the newly expanded timeframe in the New Subpoena, Plaintiffs now seek documents, communications, and testimony up to *three years after* Suno developed and launched the music-generative AI service at issue in the *UMG* litigation.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs subpoenas to non-parties, and provides important protections against discovery demands that impose undue burden or expense. *See Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 4166780, at *4 (N.D. Cal. Sep. 3, 2019). A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Accordingly, courts must quash or modify a subpoena that "fails to allow a reasonable time to comply" or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i), (iv).

Additionally, subpoenas issued pursuant to Rule 45 are subject to the same discovery scope limitations that govern requests under Rule 26(b). *Fujikura Ltd. v. Finisar Corp.*, 2015 WL

5782351, at *2 (N.D. Cal. Oct. 5, 2015). Thus, non-party subpoenas are subject to the relevance and proportionality requirements of Rule 26(b)(1), which limits discovery to nonprivileged information that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In assessing proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Moreover, courts must limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2014 WL 2798581, at *2 (N.D. Cal. June 19, 2014) (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)). Discovery must also be limited where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii). Courts likewise limit discovery to "protect third parties from harassment, inconvenience, or disclosure of confidential documents." *Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, 2024 WL 3925704, at *3 (N.D. Cal. Aug. 23, 2024) (quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)).

Ultimately, the party issuing the subpoena bears the burden of demonstrating "that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *AngioScore, Inc. v. TriReme Med., Inc.*, 2014 WL 6706873, at *3 (N.D. Cal. Nov. 25, 2014). In determining whether to enforce a subpoena, courts "balance[] the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *SARA*, 2024 WL 3925704, at *3 (citation omitted).

## IV. ARGUMENT

### A. The New Subpoena Is Untimely

The New Subpoena should be quashed on the threshold ground that it is untimely and the product of Plaintiffs' inexcusable delay. Plaintiffs served the New Subpoena on August 24, 2026—just six weeks before the close of fact discovery on September 30, 2026—even though

Lightspeed completed its production nearly a year earlier, on October 31, 2025. Plaintiffs never raised any objection, requested supplementation, or sought to compel additional discovery in the intervening ten months. Having sat on their hands while the discovery clock ran, Plaintiffs cannot now again burden a non-party with eleventh-hour demands.

Federal Rule of Civil Procedure 26(b)(2)(C)(ii) provides that courts must limit discovery where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." That standard is satisfied here. Plaintiffs have been aware of Lightspeed's role as a Suno investor since at least May 2025, when they served the Original Subpoena. They had the benefit of Lightspeed's production since October 2025, and have known since then that the production did not post-date June 2025. If Plaintiffs believed the production was insufficient or that additional documents or testimony were needed, they had ample time to raise those issues—and did not. Having already obtained documents from Lightspeed, Plaintiffs' decision to wait until the final weeks of discovery to serve sweeping, duplicative subpoenas is hard to square with any genuine need for the requested discovery. Lightspeed should not be forced to incur the substantial burden and expense of responding to Plaintiffs' belated subpoenas—including collecting, reviewing, and producing documents spanning two years and preparing a corporate representative to testify on topics covering a four-year period—where Plaintiffs elected to delay seeking this discovery for ten months.

### B. The New Subpoena Is Unduly Burdensome and Seeks Cumulative Documents and Testimony of Minimal Relevance

#### *1. The New Document Subpoena Seeks Cumulative Discovery of Marginal Relevance and Imposes an Undue Burden on a Non-Party*

The New Document Subpoena should be quashed for an additional, independent reason: it imposes an undue burden on a cooperating non-party and seeks discovery that is unreasonably cumulative and duplicative of what Lightspeed has already produced. In short, the burden of the subpoena outweighs any benefit.

"A subpoena is unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of litigation." *AngioScore*, 2014 WL 6706873,

at *2 (citing *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003)). In evaluating burden, courts "weigh the burden to the subpoenaed party against the value of the information to the serving party," considering factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.*

Because Rule 45 subpoenas often target non-parties, courts give special consideration to the burden imposed on those entities. Specifically, "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (internal quotation marks and citations omitted). Courts are especially "concerned anytime enforcement of a subpoena imposes an economic burden on a non-party." *Glass Egg*, 2019 WL 4166780, at *3 (citation omitted). Put differently, "[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a dispute to which they are not a party." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982). Consistent with these principles, where the requested documents are irrelevant or unlikely to lead to the discovery of admissible evidence, any burden imposed by the subpoena is necessarily undue. *Dropbox, Inc. v. Motion Offense LLC*, 2022 WL 5400705, at *2 (N.D. Cal. Apr. 20, 2022).

The six document requests in the New Document Subpoena, all of which seek "ALL DOCUMENTS and COMMUNICATIONS," are identical to the six categories that Lightspeed already addressed in connection with the Original Subpoena. The sole difference is the time period: the New Document Subpoena extends the collection window from November 1, 2024 through the present. But Plaintiffs have offered no reasonable explanation why documents from this subsequent period, which begins more than a year after Suno publicly launched its music-generative AI service in July 2023, bear on the central issues in this case—namely, whether Suno's use of copyrighted recordings to train its AI service constitutes infringement or fair use.

The New Document Subpoena therefore seeks precisely the type of cumulative and duplicative discovery that Rule 26(b)(2)(C)(i) requires courts to limit. The subpoena repeats six

categories already addressed by Lightspeed and identifies no reason to believe the expanded period contains materially different information than what Lightspeed already collected, reviewed, and produced. Courts routinely reject efforts to obtain a second round of substantially identical discovery from non-parties. *See, e.g.*, *Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 423 (S.D.N.Y. 1998) (quashing a second subpoena where the non-party had already complied with substantially similar subpoenas and the new requests largely mirrored the original requests, often extending only the time period covered); *see also Solamere Cap. v. DiManno*, 621 F. Supp. 3d 152, 161 (D. Mass. 2022) (quashing second-round subpoena to non-party investment fund as "unreasonably cumulative or duplicative" where requests overlapped with prior discovery).

The marginal relevance of any additional documents is apparent from both Lightspeed's role and the timing of its investment. Lightspeed first invested in Suno in May 2024 as part of Suno's Series B financing, after Suno had already launched the music-generative AI service at issue in the *UMG* litigation. Lightspeed's due diligence and investment analyses therefore occurred after Suno's product was already operational. Moreover, Lightspeed has already produced documents concerning that investment and diligence process, including documents collected through June 2025. Plaintiffs therefore already possess Lightspeed's documents covering more than a year following Lightspeed's investment in Suno. The New Document Subpoena seeks an additional period beyond that production, yet Plaintiffs offer no reason to believe that later period contains materially different or more relevant information. Any documents created after November 2024 are further removed still from the conduct underlying Plaintiffs' claims and bear, at most, only tangential relevance to whether Suno's use of copyrighted recordings to train its AI models constitutes infringement or fair use.

Moreover, Plaintiffs have not identified any specific document, communication, or category of information missing from Lightspeed's prior production that they expect to find within the expanded period. Plaintiffs do not contend that Lightspeed failed to produce responsive documents concerning its investment in Suno, nor do they identify any particular topic requiring supplementation. Instead, the New Document Subpoena simply re-serves the same six broad categories with a wider collection window, without any showing that additional responsive

material exists or that such material would be relevant. Plaintiffs' apparent belief that the post-November 2024 period may contain useful information is entirely speculative. Having already obtained a substantial production from Lightspeed, Plaintiffs now seek to expand the temporal scope of the same requests based on little more than the hope that additional relevant material will turn up. That is precisely the sort of fishing expedition courts routinely reject. *Cf. Lemberg L. LLC v. Hussin*, 2016 WL 3231300, at *6 (N.D. Cal. June 13, 2016) (quashing non-party deposition and document subpoena where the issuing party sought discovery based on "pure speculation" that the witness would provide relevant, nonprivileged information and failed to show the discovery was proportional to the needs of the case); *Kovalenko v. Kirkland & Ellis LLP*, 2024 WL 664691, at *4 (N.D. Cal. Feb. 16, 2024) (quashing overbroad third-party subpoena where the requesting party failed to limit its requests to particular categories of documents, finding that "[t]o link these requests to anything relevant requires a great deal of imagination" and that the requesting party was attempting to engage in a "fishing expedition").

Nor can Plaintiffs justify an additional production on the basis that Lightspeed might possess analyses regarding Suno's alleged impact on the market. This topic was encompassed by two of the six agreed-upon categories in the Original Subpoena—(i) the market for Suno's music-generative AI service and its outputs and (ii) Suno's actual or potential impact on the music industry. *See supra* Part II.B. Merely speculating that Lightspeed may have additional responsive documents does not justify burdening a non-party with a second production. Further, a third-party investor's informal and internal analyses regarding alleged market harm are not proper substitutes for expert analysis. *See Mattel*, 353 F.3d at 814 (affirming quashing of a non-party subpoena in an infringement action where, *inter alia*, requests concerning the market for the protected works and products appeared to seek expert testimony from a non-party and exceeded the permissible scope of discovery).

Additionally, Plaintiffs have not shown that Lightspeed possesses unique information unavailable from Suno itself. Rule 26 requires courts to limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Courts regularly apply that principle to quash third-party subpoenas where the

requested information is available from a party to the litigation. *See Nidec Corp. v. Victor Co. of Japan,* 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing third-party subpoena where there was "simply no reason to burden nonparties when the documents sought are in possession of the party defendant"); *Glass Egg*, 2019 WL 4166780, at *5 (quashing third-party subpoenas where the discovery could be obtained directly from the defendant and the requests were overly broad and burdensome); *Dropbox*, 2022 WL 5400705, at *2-3 (quashing third-party subpoena where discovery sought was either irrelevant or obtainable from a party to the litigation); *City of Sterling Heights*, 2014 WL 2798581, at *2 (quashing subpoenas as duplicative where relevant information was obtainable from party sources).

The same principle has particular force in the context of venture-capital investors. Courts have routinely declined to compel discovery from investors absent a showing that they possess unique, independently relevant information unavailable from the portfolio company or public sources. For example, in *Visto Corp. v. Smartner Information Systems, Ltd.*, the court declined to compel production of venture-capital firms' internal investment analyses where there was "nothing in the record to suggest" the investors possessed information unavailable from the company or public sources. 2007 WL 218771, at *4 (N.D. Cal. Jan. 29, 2007). Likewise, in *SARA*, the court denied enforcement of subpoenas directed to non-party venture-capital investors because the investors had already produced documents concerning the reasons for their investments and the requesting party failed to establish the relevance of additional requests seeking internal analyses of the company. 2024 WL 3925704, at *3-5. That reasoning applies with even greater force here. Lightspeed has already produced 152 documents totaling 1,259 pages, yet Plaintiffs identify no additional, unique, relevant information possessed by Lightspeed that could not be further obtained from Suno or public sources.

Lightspeed's burden of compliance, by contrast, would be substantial. Compliance would require Lightspeed to repeat a process it has already undertaken. After negotiating the scope of production, Lightspeed previously collected, reviewed, and produced 152 documents. The New Document Subpoena would require Lightspeed to reopen those efforts, collect and review documents spanning additional periods, and conduct another privilege review. Lightspeed is a

non-party venture-capital firm, not a litigant. Requiring Lightspeed to reopen its collection efforts and divert its personnel and resources to conduct a second round of discovery would impose substantial costs for, at best, marginally relevant information. *See AngioScore*, 2014 WL 6706873, at *2-3 (granting protective order barring a non-party's compliance with document and deposition subpoenas where the burden of compliance outweighed the minimal probative value of the requested information, much of which was "tangential" to the issues in the case).

#### ***2. The Deposition Subpoena Seeks Overly Broad, Duplicative Testimony and Imposes a Substantial Burden on a Non-Party***

The Deposition Subpoena should independently be quashed. Plaintiffs seek Rule 30(b)(6) testimony from Lightspeed on twenty designated topics spanning from January 1, 2022 to the present—a period exceeding four years. The topics sweep broadly across virtually every aspect of Lightspeed's relationship with Suno, including its investment decisions, due diligence activities, communications, board-related matters, views regarding the music industry, and the authenticity of previously produced documents. The resulting burden on a non-party substantially outweighs any likely benefit of the requested testimony.

"Because Rule 30(b)(6) places substantial responsibilities and burdens on the responding corporate party … the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned." *United States v. HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *7 (C.D. Cal. Oct. 26, 2016) (internal quotation marks and citations omitted). *HVI Cat Canyon* is instructive here. Recognizing those burdens, the court granted a protective order against a deposition subpoena where the breadth and depth of the noticed topics made witness preparation "nearly impossible," and the subpoena sought information better obtained through other discovery mechanisms and expert testimony. *Id.* at *8-10. The court further observed that Rule 30(b)(6) "is not intended to be the only method to obtain evidence on every aspect of the case, particularly when the case is large and complex" and that witness preparation becomes "less realistic and increasingly impossible as the number and breadth of noticed subject areas expand." *Id.* at *8-9. Those same concerns are present here.

While Plaintiffs' notice contains fewer topics than the notice at issue in *HVI*, the burden is analogous. Plaintiffs seek testimony on twenty topics spanning more than four years and encompassing nearly every aspect of Lightspeed's relationship with Suno. The topics range from specific financing rounds and due-diligence activities to broad subjects such as Suno's purported impact on the music industry, the availability and cost of licensing sound recordings for use as training data, and Suno's training data. Ex. G at 10-12. As in *HVI*, the cumulative breadth and depth of these topics would require Lightspeed to prepare a witness on a vast range of subjects, many of which are more appropriately explored through party document discovery, party witnesses, or expert testimony. This is especially true of topics related to alleged market harm. To the extent Plaintiffs seek testimony from a non-party investor regarding Suno's impact on the music industry, such testimony would be cumulative of expert analysis and party discovery. A non-party investor's views on market impact are not an appropriate substitute for the expert testimony that this issue demands. *See supra* Part IV.B.1.

The Deposition Subpoena is also cumulative. Many of Plaintiffs' twenty deposition topics track the same subject matter covered by their earlier document requests, including Suno's training data, copyright-related issues, litigation risks, business risks, the market for Suno's AI service, and Suno's impact on the music industry. In response to those requests, Lightspeed collected, reviewed, and produced a substantial number of responsive, nonprivileged documents. Plaintiffs do not identify any category of information missing from that production that necessitates a Rule 30(b)(6) deposition. Instead, they seek a deposition covering many of the same subject areas, rendering the requested testimony largely duplicative of discovery they already obtained. Furthermore, many of the noticed topics overlap with subjects that are primarily within Suno's knowledge and control, including the development and training of its AI service, its training-data practices, and its relationships with investors. Testimony from Lightspeed on those same topics would thus be cumulative of testimony and discovery available from Suno itself.

Courts in this Circuit have routinely quashed non-party deposition subpoenas where the requesting party failed to identify material and unique information unavailable from party witnesses, the anticipated value of the testimony was limited, and the burden on the non-party was

substantial. *See, e.g.*, *Amini*, 300 F.R.D. at 411-13 (quashing subpoena served on non-party where the value of the testimony was "low or at best unknown" and any relevant testimony was obtainable from party witnesses and likely cumulative); *AngioScore*, 2014 WL 6706873, at *3 (granting protective order against non-party deposition subpoena where the burden of compliance outweighed the minimal probative value of the requested information, much of which was tangential to the issues in the case). So too here. Lightspeed has already produced extensive documents, Suno has its own witnesses on overlapping topics, and Plaintiffs have not shown that any additional, unique information Lightspeed may possess justifies the substantial burden of a non-party Rule 30(b)(6) deposition. *See Visto*, 2007 WL 218771, at *4; *SARA*, 2024 WL 3925704, at *4-5. The requested deposition would therefore duplicate the existing record while imposing substantial preparation and attendance costs on a non-party.

### C. The Requested Discovery Is Not Proportional to the Needs of the Case

Even if the New Subpoena were timely and not independently barred as cumulative, the discovery it seeks fails the proportionality inquiry mandated by Rule 26(b)(1). The Rule requires courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Each factor weighs against requiring Lightspeed to comply with the New Subpoena.

The core questions in this case—whether Suno's use of copyrighted sound recordings to train its AI model constitutes infringement or fair use—are answered by Suno's own records, testimony, and expert analysis, not by the files or testimony of a venture capital investor. As set forth above, Plaintiffs have identified no unique, relevant information in Lightspeed's possession that Lightspeed has not already produced and that is unavailable from Suno or public sources. *See supra* Part IV.B.

Critically, the parties' relative access to relevant information strongly favors quashing. Suno possesses the same investor communications, board materials, and business records that Plaintiffs seek from Lightspeed, and many of the overlapping topics on which Plaintiffs seek

testimony are primarily within Suno's knowledge and control. Requiring a non-party to produce such discovery at its own expense is the definition of disproportionate discovery.

In sum, the burden on Lightspeed is manifestly disproportionate to any marginal evidentiary benefit Plaintiffs might obtain from a second-round production and a twenty-topic deposition.

## V. CONCLUSION

For the foregoing reasons, Lightspeed respectfully requests that this Court enter an Order quashing Plaintiffs' New Subpoena.

Dated: September 16, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

By */s/ Robin L. Gushman*

Robin L. Gushman (SBN 305048)
*robin.gushman@lw.com*
Brittany N. Lovejoy (SBN 286813)
*britt.lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.391.0600

*Attorneys for Non-Party Lightspeed Management Company, L.L.C. d/b/a Lightspeed Venture Partners*